IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| OLIVER LINDEL-PACKER, | § | |
| | § | No. 481, 2018 |
| Respondent Below, | § | |
| Appellant, | § | Court Below: Family Court |
| | § | of the State of Delaware |
| v. | § | in and for Sussex County |
| | § | |
| DIVISION OF FAMILY SERVICES | § | File Nos. CS18-05-09TS |
| and OFFICE OF CHILD | § | CS18-05-10TS |
| ADVOCATE | § | |
| | § | Petition Nos. 18-16216 |
| Petitioners Below, | § | 18-16225 |
| Appellees. | § | |

Submitted: March 6, 2019
Decided: April 22, 2019

Before **STRINE**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

**O R D E R**

On this 22nd day of April 2019, upon consideration of the parties' briefs and the record on appeal, it appears that:

(1)    The appellant, Oliver Lindel-Packer (the father),[1] appeals from a Family Court Order permanently terminating his parental rights to his biological daughter, Aria.[2] The father makes two claims on appeal. First, he contends that the Family Court improperly imputed the substance abuse issues of Aria's mother (the mother) to him and that this violated his right to due process under the United

[1] A pseudonym was assigned on appeal pursuant to Supr. Ct. R. 7(d).
[2] Her first name is used for privacy purposes.

States and Delaware Constitutions. Second, he contends that the Family Court's finding that the Division of Family Services (the "Division") proved by clear and convincing evidence that he failed to plan under 13 *Del. C.* § 1103(a)(5) was clearly wrong and not sufficiently supported by the record.

(2) As to the father's second argument, having considered this matter on the briefs filed by the parties, we have determined that the final judgment of the Family Court is supported by the record and should be affirmed on the basis of and for the reasons assigned by the Family Court in its opinion dated August 21, 2018. Accordingly, we will address only the father's first argument.

(3) The pertinent facts are as follows. Aria was born on January 13, 2017. She entered into the care of the Division on January 18, 2017, because she and the mother tested positive for opiates and marijuana at the time of birth. At this same time, the Division took custody of the mother's other minor child, Michael, who has an unknown biological father. On January 26, 2017, the mother and the father (collectively, the parents) attended a preliminary protective hearing. At this hearing, they were found indigent and were each appointed counsel. The father stipulated that probable cause existed to find Aria dependent in his care based on housing. The mother waived her right to an adjudicatory hearing and stipulated to a finding of dependency based on housing and her substance abuse. On May 25, 2017, following genetic testing which confirmed that the father is the biological

father of Aria, the father agreed that Aria was dependent in his care and waived his right to an adjudicatory hearing.

(4)     The initial permanency plan of this proceeding was reunification of the children with the parents.  To this end, the Division created case plans for each parent to complete.  Pursuant to their case plans, the mother began receiving substance abuse treatment, and both parents participated in regular visitation with the children.  At a review hearing on May 25, 2017, the court learned that the parents had obtained housing.  Following another review hearing on November 2, 2017 (the "November Review Hearing"), the parents began having unsupervised visits with the children and had two overnight weekend visits at their home.  A permanency hearing was held on January 25, 2018 (the "January Permanency Hearing").  At the conclusion of that hearing, although the court explained that it continued to be in the best interest of the children to remain in the custody of the Division, the court found compelling reasons to continue to approve reunification as the permanency plan.

(5)     In March 2018, however, things turned for the worse.  The parents lost their housing and moved into a motel.  At first, they continued to have visits at the motel, but after March 15, 2018, their family interventionist, Betsy Bradley, had no success contacting either parent, and neither the mother nor the father attempted to

contact Ms. Bradley, the Court Appointed Special Advocate (the "Special Advocate"), the Division, or their attorneys.

(6) The parents then failed to appear at their permanency review hearing on April 19, 2018 (the "April Permanency Review Hearing"). At this hearing, the parents' loss of their housing, absence of contact with their attorneys and case workers, and failure to visit with their children since March 15 were all brought to the court's attention. Because of this regression in progress, the Division moved to change the permanency plan to termination of parental rights based on a failure to plan under 13 *Del. C.* § 1103(a)(5). In response, the parents' attorneys each informed the court that they had not heard from their clients since the January Permanency Hearing and, as a result, could not take a position on behalf of their clients.

(7) At the close of the hearing, the court changed the permanency plan from reunification to termination of parental rights. The court agreed "that something significant has happened since January" and "that it doesn't appear that Mom and Dad are close to reunification," explaining "they're further away from reunification than they were in January."[3] The court then noted the following reasons for its decision: (1) the mother's failure to comply with her substance abuse treatment, by continuing to use marijuana, and her failure to complete mental health treatment; (2)

---

[3] App. to Appellant's Opening Br. at A174.

the insufficient evidence of the parents' consistent employment; (3) the absence of visits with the children since March and their failure to attend the children's medical appointments; (4) the parents' lack of housing and their failure to use the resources offered by the Division to obtain suitable housing; and (5) the parents' failure to attend the hearing and ask for more time on their reunification plans. A final hearing was ultimately scheduled for July 26, 2018 (the "Termination Hearing").

(8) The parents appeared at the Termination Hearing represented by their court-appointed attorneys. Several witnesses testified at the hearing and were subject to examination by the parents' attorneys. The mother and the father each testified as well. Following the Termination Hearing, on August 21, 2018, the Family Court issued an Order that terminated the parents' parental rights. The court found that the Division established by clear and convincing evidence that the parents "failed to plan adequately for the children's physical needs or mental and emotional health and development" under 13 *Del. C.* § 1103.[4]

(9) The court's finding of a failure to plan is supported by the record, and we affirm that ruling for the reasons assigned by it. As to the father's first argument, we have concluded that his right to due process was not violated by the Family Court's using the mother's substance abuse issue as a reason to find that it continued

---

[4] Appellant's Opening Br. Ex. A, at 6.

to be in the children's best interest to remain in foster care following both the November Review Hearing and the January Permanency Hearing.

(10) When reviewing a decision of the Family Court to terminate parental rights, this Court conducts a "review of the facts and law, as well as the inferences and deductions made by the trial court."[5] "We will not disturb a trial judge's factual findings unless they are clearly erroneous and justice requires that they be overturned."[6] "Moreover, this Court will not substitute its own opinion for the inferences and deductions made by the Trial Judge where those inferences are supported by the record and are the product of an orderly and logical deductive process."[7] Our review is limited to an abuse of discretion when the trial judge has correctly applied the appropriate law.[8] "To the extent that the issues on appeal implicate rulings of law, we conduct a *de novo* review."[9]

(11) Although the father and the mother presented themselves to the Family Court as a single-family unit throughout the proceedings and together sought reunification with the children, the father now argues that the court improperly imputed the mother's issues of parental unfitness (her continued substance abuse) to

---

[5] *Powell v. Dep't. of Servs. for Children, Youth and their Families*, 963 A.2d 724, 730 (Del. 2008).
[6] *Arthur-Lawrence v. Div. of Family Servs.*, 884 A.2d 511, 2005 WL 2397523, at *5 (Del. Sept. 27, 2005) (Table).
[7] *Solis v. Tea*, 468 A.2d 1276, 1279 (Del. 1983).
[8] *Powell*, 963 A.2d at 731.
[9] *Id*. at 730-31.

him and thus violated his constitutional right to due process. His argument pertains only to the hearings and rulings occurring before March 2018—in particular, the November Review Hearing and the January Permanency Hearing and their respective rulings. He argues that by the time of those hearings he had substantially complied with all elements of his case plan. The only issue left to resolve for the purpose of reunification at that time was the mother's continued marijuana use. Accordingly, he makes two related arguments: (1) that imputing the mother's issues to him violated his right to procedural due process and (2) that his right to substantive due process was violated because, by the time of the November Review Hearing, the Division no longer had a compelling interest in keeping Aria out of his custody.

(12) The father's right to procedural due process was not violated. Citing the three *Mathews v. Eldridge* factors, [10] he essentially argues that it was procedurally improper for the court to impute to him the mother's issues of parental fitness in determining whether to continue to deprive him of custody of Aria. He fails, however, to point to any *procedural* defect in the process. This is because he was afforded adequate process. He was appointed counsel, who represented him

---

[10] 424 U.S. 319, 334-35 (1976) ("[O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.").

from the first preliminary hearing through the Termination Hearing (and, now, through this appeal). With the aid of counsel, he was able to present evidence, cross-examine witnesses, and testify throughout the proceedings. These procedures afforded him an opportunity to regain custody of Aria and thus prevented any violation of his right to procedural due process.[11] Because he has not identified any procedural defect, his argument is really an attack on the substantive basis (the mother's continued substance abuse) for the court's decisions to have Aria remain in foster care and, therefore, is properly considered as an argument that his right to substantive due process was violated.

(13) The Family Court, however, did not violate the father's right to substantive due process either. The "Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children."[12] "The State, therefore, may not authorize the termination of the legal and social relationship between a parent and a minor child absent a showing of a compelling state interest."[13] This Court has found that the State has a compelling interest in protecting a child "from

---

[11] *Cf. Watson v. Div. of Family Servs.*, 813 A.2d 1101, 1111-12 (Del. 2002) (en banc) (finding a procedural due process violation where an indigent parent was not appointed counsel until six months into the termination proceeding).

[12] *Troxel v. Granville*, 530 U.S. 57, 66 (2000).

[13] *In re Hanks*, 553 A.2d 1171, 1177 (Del. 1989).

circumstances which directly threaten or affect the minor's physical or emotional health."[14]

(14) The father claims that the Family Court violated his fundamental right to custody of Aria because, by the time of the November Review Hearing, the Division no longer had a compelling interest in keeping her out of his custody, thus resulting in an erroneous deprivation of his fundamental right. He argues that the Division did not have a compelling interest in depriving him of custody because the primary reason, in his view, for depriving him of custody was the mother's parental unfitness—namely, her continued substance abuse. Apart from imputing the mother's parental issues to him, he argues, there were no other facts showing that he was unfit to parent Aria. Based upon his completion of the substance abuse rule out and mental health treatment, as required by his case plan, he now objects to the court's rulings that it continued to be in the best interest of the children to remain in foster care following both the November Review Hearing and the January Permanency Hearing.

(15) The father's substantive due process right was not violated because the record shows that the Division had a compelling interest in depriving him of custody of Aria—to protect her from circumstances, caused by the mother's substance abuse, that directly threatened her physical and emotional health. Although the primary

---

[14] *Daber v. Div. of Child Protective Servs.*, 470 A.2d 723, 726 (Del. 1983).

barrier to the parents regaining custody of the children as of the November Review Hearing and the January Permanency Hearing was the mother's continued substance abuse, the court did not err in finding that it continued to be in the children's best interest for them to remain in foster care (as opposed to the father regaining custody of Aria). This is because the father continued to live in the same house as the mother, who he knew had a substance abuse problem she needed to correct to complete her plan, and returning Aria to the father would in effect give custody to the mother as well. Moreover, the father never requested, personally or through his attorney, that he be given custody of Aria at either of these hearings. Ultimately, the Family Court could not grant him custody of Aria until the court could make a finding that the mother's issues with substance abuse were resolved or that the father no longer lived with the mother.[15] Because it could not make either of those findings following these hearings, the court did not err in keeping the children in foster care. And because of the drastic change of events in March 2018 that led to the termination of the parents' parental rights, the father's argument that he should have regained custody of Aria after either of these hearings is effectively moot.

---

[15] The psychologist who evaluated the mother had previously testified that the children would be at risk in the father's care because he was living with the mother, who was still struggling with substance abuse. App. to Appellant's Opening Br. at A69-70. Specifically, the psychologist said, "if that [the mother's substance abuse] continues, obviously the children could not be returned to them, if they're in the same household and she is still struggling." *Id.*

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family

Court is **AFFIRMED.**

BY THE COURT:

/s/   James T. Vaughn, Jr.
Justice